# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **JIMMIE P. ST. MARIE** | **CIVIL ACTION NO. 07-1956** |
| **VS.** | **JUDGE HAIK** |
| **MICHAEL J. ASTRUE** | |
| **COMMISSIONER** | **MAGISTRATE JUDGE METHVIN** |
| **SOCIAL SECURITY ADMINISTRATION** | |

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable law, it is

recommended that the Commissioner's decision be **REVERSED.**

### *Background*

Claimant Jimmie P. St. Marie was 51 on the date of his hearing on March 30, 2006.[1]

St. Marie has a high school education and worked in the past as a roughneck and a welder/fitter

in the oil industry.[2]  St. Marie seeks disability insurance benefits and supplemental security

income, alleging disability since June 16, 2004 due to the effects of his ulcerative colitis/Crohn's

disease, including constant abdominal pain, dizziness, bloody stools, diarrhea, vomiting and

depression.

His application was denied on initial review, and following an administrative hearing, the

ALJ denied benefits on September 25, 2006.  The Appeals Council denied review and St. Marie

timely filed this appeal.

---

[1] Tr. 590.

[2] Tr. 598.

Subsequent to the request for review of the Appeals Council, St. Marie re-filed an application for disability. In a decision dated January 28, 2008, the Commissioner found that St. Marie met the medical requirements to be entitled to disability benefits as of January 6, 2007.[3]

Thus, the matter before the Court is whether St. Marie was disabled from June 16, 2004 through January 6, 2007. After reviewing the medical evidence, the undersigned concludes that the ALJ's decision that St. Marie was not disabled for this period is not supported by substantial evidence.

### *Assignment of Errors*

St. Marie alleges the following errors: 1) the ALJ erred in finding that St. Marie's impairment does not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1; and 2) the ALJ failed to recognize that St. Marie's impairment would preclude the performance of substantial gainful activity.

### *Standard of Review and Procedure for Analysis of Impairments*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).[4] In determining whether a claimant is capable of performing substantial

---

[3] Rec. Doc. 11-2.

[4] Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R.

§404.1520(b)-(f) (1992).[5]

In the instant case, the ALJ determined that St. Marie's ulcerative colitis is a severe impairment but that his depression was not (Tr. 17, 19).  She found that St. Marie has the residual functional capacity to perform light work (Tr. 22).  A vocational expert testified at St. Marie's hearing, however, the ALJ did not base her findings on the VE testimony.  She instead relied on the Medical Vocational Guidelines (the Grids) and found that St. Marie was not disabled (Tr. 22).[6]

---

[5] The procedure is as follows:

1.  If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2.  A person who does not have a "severe impairment" will not be found to be disabled.

3.  A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4.  If a person can still perform his past work, he is not disabled.

5.  If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

[6] The ALJ relied on Medical-Vocation rule 202.21 for the period from the alleged onset of disability, June 16, 2004 until October 3, 2004 and Rule 202.14 for the period from October 3, 2004, the date that St. Marie became 50, through the date of her decision.  Tr. 22.

## *Findings and Conclusions*

## *Administrative Record*

### St. Marie's Testimony

St. Marie testified that he was fired from his last job in May, 2004 because he had "been working sick," and he "wasn't up to his [supervisor's] standards" because he was in pain constantly and missed a lot of work

He described his pain as a "chronic stabbing." (Tr. 602). He does not take any medication for pain because it causes him to have severe depression. (Tr. 603). He testified that his symptoms have worsened since he left his job, and that he has trouble sleeping due to nightmares. (Tr. 599). He has tried to commit suicide three time because the pain never ends. (Tr. 605-606).

St. Marie testified that he had mowed his yard the week before his hearing, but the chore led to two abdominal attacks. (Tr. 600). He can do his cooking, cleaning, and laundry, grocery shop, and bathe and dress himself, but does these chores at his own pace, and sometimes skips a day of personal grooming if he feels too bad. (Id.). He has a license but does not drive because he does not have a vehicle. (Tr. 599-600).

His sons and a friend assist in his care. (Tr. 601). He lives alone, receives food stamps, and is financially supported by his children. (Tr. 595-596).

### University Medical Center at Lafayette

St. Marie has no personal treating physician. He obtains medical care at the University Medical Center in Lafayette, Louisiana (UMC). The record shows that St. Marie repeatedly

sought care at UMC for his ulcerative colitis throughout the period at issue, either through its clinics, emergency room, or hospital.

The medical record shows that St. Marie visited UMC twice in 2002, twice in 2003, and 7 times in 2004. In 2005, he went to UMC on January 18; was admitted to the UMC hospital from August 25 through August 31, and went to the Clinic on September 19. In 2006, he went to the E.R. on January 12, was hospitalized from April 27-28, was seen at the Clinic on May 16, again hospitalized from June 15-20, 2006, and seen at the Clinic on December 7, 2006.

In 2007, he was seen on January 4, 2007, January 6, 2007, February 15, and March 12. He was hospitalized from March 13-20. He was back at the E.R. on March 23, was again hospitalized from March 24-April 1 when he underwent a subtotal colectomy with ileostomy. Shortly after the colectomy, he suffered a bowel perforation and was hospitalized in Intensive Care.[7]

Attached to the Report and Recommendation as Appendix A is a synopsis of St. Marie's medical treatment.

**Does St. Marie's Ulcerative Colitis/Crohn's Disease meet a Listing:**?

The ALJ concluded that St. Marie failed to carry his burden of proof that he met a listing. She noted that St. Marie had not made the argument nor was it apparent from the record that St. Marie's impairment met or equaled a listing.

---

[7] St. Marie states he was only able provide some of the medical records for this problem to the Appeals Council, but states he was hospitalized for a month and was again admitted on June 10, 2007 through June 13, 2007. The government argues that this is new evidence. The findings made in this Report and Recommendation were made without consideration of this evidence.

Listing 5.06 states as follows:

Chronic ulcerative or granulomatous colitis (demonstrated by endoscopy, barium enema, biopsy, or operative findings). With:

A. Recurrent bloody stools documented on repeated examinations and anemia manifested by hematocrit of 30 percent or less on repeated examinations; or

B. Persistent or recurrent systemic manifestations, such as arthritis, iritis, fever, or liver dysfunction, not attributable to other causes; or

C. Intermittent obstruction due to intractable abscess, fistula formation, or stenosis; or

D. Recurrence of findings of A, B, or C above after total colectomy; or

E. Weight loss as described under § 5.08.

20 C.F.R. Pt. 404, Subpt. P, App. 1 .

St. Marie argues in a conclusory fashion that he meets all five of the criteria and makes no reference whatsoever to the medical record for support.[8]  St. Marie's diagnosis of chronic ulcerative colitis meets the first requirement of the listing.   However, St. Marie must meet at least one of the other requirements enumerated in 5.06A, B, C, D, and E.  The evidence shows he does not.

5.06A -  St. Marie experiences recurrent bloody stools and low hematocrit (Hct) levels, and his Hct levels were under 30% during his March, 2007 hospital stay.[9]  However, St. Marie's

---

[8]  The government argues that St. Marie cannot meet the Listing because he had no recurrence of symptoms under A, B, or C after his colectomy.  St. Marie's colectomy was on March 26, 2009.  (Tr. 499).   The government relies on treatment records dated May 6, 2006 to support its argument.  (Rec. Doc. 12 at 5; Tr. 272).   The government's argument is obviously incorrect.  Additionally, St. Marie must satisfy one of the criteria not all.

[9]  From March 26, 2007 to April 1, 2007 they were: 32.1, 35.2, 31.2, 26.6, 24.5, 23.6, 24.1, and 27.3.  (Tr. 482).

Hct level has not been less than 30% on repeated examinations.[10]  Listing 5:00A explains that complications, such as nutrition, multiple recurrent inflammatory lesions, or complications of disease, such as fistulae, abscesses, or recurrent obstruction, usually respond to treatment.  The listing requires, "[t]hese complications must be shown to persist on repeated examinations despite therapy for a reasonable presumption to be made that a marked impairment will last for a continuous period of 12 months."

St. Marie's Hct levels were under 30% on March 19 and 20, 2007.[11]  The levels were went over and under 30% during his March 24 - April, 2007 stay.[12]  However, prior to March, 2007, there was no evidence of persistent readings below 30%.  Additionally, there are no lab reports for the period after his colectomy. The undersigned therefore finds that St. Marie has not shown that his Hct was less than 30% on repeated examinations as required by the listing.

5.06B - St. Marie has not pointed to nor has the undersigned found any evidence of consistent arthritis, iritis, fever or liver dysfunction.[13]

506C - Likewise, St. Marie has not referenced nor has the undersigned found any evidence of intermittent obstruction due to intractable abscess or fistula formation.  X-rays showed no evidence of obstruction on April 13, 2004; June 21, 2004; June 28, 2004; or

---

[10]  St. Marie's Hct levels included the following: April 13, 2006 - 39.6; June 21, 2004 - 33.1; July 12, 2004 - 31.0; January 18, 2005 - 38.9; August 25-31 - 43; January 12, 2006 - 43.0; April 27-28, 2006 - 34.5; June 20, 2006 - 30.2; November 30, 2006 - 39.5; March 13, 2007 - 35.6; March 20, 2007 - 29.8.  *See* synopsis.

[11] Rec. Doc. 516.

[12] Rec. Doc. 482-484.

[13] St. Marie's temperature readings included the following: April 13, 2004 - 98.9; June 21, 2004 - 98.7; June 28, 2004 - 99.6; July 19, 2004 - 97.6, 97.9; September 28, 2004 - 98.9; January 18, 2005 - 98.4; June 15, 2006 - 98.4; December 7, 2006 - 98.5; January 4, 2007 - 98.2; January 6, 2007 - 98.5; February 15, 2007 - 98.5; March 12, 2007 - 102.  *See* synopsis.

January 18, 2005.[14]  When he experienced toxic megacolon, the x-rays showed an extensive

dilation of the transverse colon, but did not reflect an obstruction. (Tr. 223).  Only on March 12,

2007 did  x-rays show a markedly distended loop of colon and scattered air-fluid levels

suggesting a partial bowel obstruction or localized ileus.  (Tr. 548).

506D - There is no showing that St. Marie met sections A, B, or C prior to his colectomy,

so St. Marie cannot show a *recurrence* of these findings *after* it.

506E - This section requires that a claimant must meet the weight loss requirements of

Listing 5.08.[15]   This listing has two alternative requirements.  The first section requires a lower

weight than the second.  The second section allows a higher weight but the claimant must

---

[14] Tr. 169, 156, 152, 216.

[15] Listing 5.08 requires:   Weight loss due to any persisting gastrointestinal disorder: (The following weights are to be demonstrated to have persisted for at least 3 months despite prescribed therapy and expected to persist at this level for at least 12 months.) With:

A. Weight equal to or less than the values specified in Table I or II; or

B. Weight equal to or less than the values specified in Table III or IV and one of the following abnormal findings on repeated examinations:

1. Serum albumin of 3.0 gm. per deciliter (100 ml.) or less; or

2. Hematocrit of 30 percent or less; or

3. Serum calcium of 8.0 mg. per deciliter (100 ml.) (4.0 mEq./L) or less; or

4. Uncontrolled diabetes mellitus due to pancreatic dysfunction with repeated hypergylcemia, hypoglycemia, or ketosis; or

5. Fat in stool of 7 gm. or greater per 24-hour stool specimen; or

6. Nitrogen in stool of 3 gm, or greater per 24-hour specimen; or

7. Persistent or recurrent ascites or edema not attributable to other causes.

Tables of weight reflecting malnutrition scaled according to height and sex--To be used only in connection with 5.08.

20 C.F.R. Pt. 404, Subpt. P, App. 1

additionally meet at least one of seven enumerated non-weight loss requirements.  St. Marie is 5' 8" tall.  Table I  requires that he weigh no more than 109 lbs.  Table III allows him to weigh 116 lbs.  St. Marie's weight never approximated these low amounts but ranged generally from a high of 180 to lows around 160 lbs.  *See* Appendix A.

Because St. Marie has not shown anemia manifested by repeated readings of a hematocrit level less than 30%, has not shown persistent or recurrent systemic manifestations, intermittent obstructions, or the required weight loss, I find that St. Marie does not meet Listing 5.06.

## Can St. Marie Maintain Employment?

The ALJ recognized that St. Marie's ulcerative colitis is a serious impairment.  The ALJ then found that St. Marie could perform the full range of light work. (Tr. 21).  This finding was obviously based on the physical residual functional capacity assessment completed by a state agency medical consultant on August 31, 2004.  (Tr. 179-186).  The undesigned concludes that the ALJ's RFC assessment is not supported by substantial evidence.

### Credibility

The ALJ found that St. Marie's complaints of disabling constant pain, bloody diarrhea, and weakness and fatigue were not entirely credible:

> The Administrative Law Judge is aware of the existence of several inconsistencies in the record regarding the claimant's use of alcohol.  He reported to the consultative psychologist, Dr. Greenway, in May, 2006 that he had been abstinent from alcohol for many years. However, on June 15, 2006, the claimant reported to University Medical Center personnel that he had discontinued drinking just thirty days prior to admission.  One month later, when seen in the University Medical Center emergency room, the claimant stated that he had not used alcohol in the previous ninety day period.  These types of inconsistencies detract from the claimant's credibility.  Additionally, the undersigned notes that claimant has been advised on multiple occasions to discontinue the use of alcohol, as well as to stop smoking, as these habits have resulted in exacerbation of his abdominal condition. Despite these recommendations, the claimant has not followed the advice of his

treatment sources and admitted at the hearing that he continues to smoke one pack of cigarettes daily.

The undersigned finds it significant that the claimant has not followed through with recommendations by his treating physicians at the University Medical Center regarding scheduling an appointment for a colonoscopy. If the claimant's symptoms are not of sufficient severity as to prompt him to seek further evaluation of his condition, then it becomes difficult to assume that the claimant's alleged impairment is at a level which would totally preclude the performance of substantial gainful activity.[16]

There is sparse evidence in the record to support the ALJ's analysis. Treating physicians did advise St. Marie to cease alcohol and tobacco, and a progress note on April 19, 2004 reflects that St. Marie's previous bout with rectal bleeding a month before was related to alcohol. (Tr. 162). Otherwise, there is no support for the conclusion that St. Marie's numerous flare-ups over a period of years were *caused* by his use of these products. There is no substantial evidence to support the ALJ's suggestion that, if St. Marie had successfully ceased drinking or smoking, the course of his illness would have significantly improved, and he would have been able to return to work.

Further, the ALJ's finding that St. Marie's failure to schedule a colonoscopy was significant ignores that St. Marie consistently appeared for his clinic appointments during 2004, 2005, and 2006, and failed only once to appear for an appointment on December 4, 2005.[17] Otherwise, he was frequently being treated at the E.R. or being treated by admission to the hospital, once in 2005, twice in 2006, and for extended periods in 2007.[18]

---

[16] Tr. 21.

[17] Tr. 162, 151, 136-139, 152, 198, 174 (no show), 272, 576.

[18] Tr. 222-245, 282-332, 333-343, 507-548.

St. Marie testified that he cannot work because of his constant pain, and diarrhea, fatigue and other problems related to his ulcerative colitis.  St. Marie testified that he lost his last job because his pain and other symptoms were causing him to miss work.  A claimant's subjective complaints must be corroborated at least in part by objective medical testimony.  Houston v. Sullivan, 895 F.2d 1012, 1016 (5th Cir. 1989).

St. Marie's complaints are well-supported by the objective medical record of evidence, including documented complaints of severe pain, low Hct readings, diagnoses of toxic megacolon, anemia, and evidence of repeated hospital admissions for treatment of his symptoms. To the contrary, the ALJ's credibility findings are not supported by substantial evidence.  While St. Marie's reports of alcohol use may have been inconsistent, and while his doctors recommended that St. Marie discontinue using alcohol and tobacco, there is no support for the ALJ's conclusion that St. Marie's impairments would lessen or disappear if St. Marie quit drinking and smoking.

**RFC**

Social Security Ruling 96-8p emphasizes that an RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a "regular and continuing basis."  A regular and continuing basis means "8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR 96-8p.  St. Marie's testimony that he cannot sustain work on a regular basis because he misses a lot of work due to his pain and other symptoms is supported by the evidence.  I therefore find that the ALJ's RFC assessment that St. Marie can perform the full range of light work is not supported by substantial evidence.

**Non-Exertional Limitations - V.E. Testimony**

Although V.E. Wendy Klamm testified at St. Marie's hearing, the ALJ relied on the Grids to make her finding of non-disability, implicitly finding that St. Marie has no non-exertional limitations.

The Medical-Vocational Guidelines were established to allow the ALJ take administrative notice of the existence of jobs in the national economy when a claimant's residual functional capacity, age, education and previous work experience meet certain specified criteria. Use of the guidelines in appropriate cases has been approved by the United States Supreme Court. Heckler v. Campbell, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); Jones v. Heckler, 702 F.2d 616, 622 (5th Cir. 1983). Thus, the Commissioner is relieved in certain cases of the burden of calling a vocational expert to testify about a claimant's ability to perform other substantial gainful activity.

However, when non-exertional limitations are shown, a disability decision cannot be made solely on the basis of the Guidelines. Martin v. Heckler, 748 F.2d 1027 (5th Cir.1984). In such cases, the ALJ must rely upon expert vocational testimony or other such evidence to establish that such jobs exist. Fraga v. Bowen, supra; Scott v. Shalala, 30 F.3d 33 (5th Cir. 1994); Lawler v. Heckler, 761 F.2d 195, 198 (5th Cir.1985).

St. Marie complains solely of non-exertional limitations - constant pain, dizziness, the need for ready access to a bathroom because of frequent bouts of diarrhea, fatigue, and depression. As discussed above, these complaints are well-supported by the record. Accordingly, I conclude that it was error for the ALJ to rely on the Grids exclusively when

making her determination that there were jobs that exist in significant number in the national

economy that the claimant can perform.

When the ALJ questioned the V.E., her hypothetical was based on an individual who

could do sedentary work. The ALJ stated:

> I'm going to note for the record that DDS put this claimant at 10 to 20. I couldn't
> read my handwriting. It's 10 to 20. I'm allowing for no postural changes required
> and treating the claimant as though he were at ten pounds only, although DDS
> said that he could lift 20. At sedentary there would be jobs available at that
> level.[19]

She continued:

> And I have a final question and that is with full credibility for each and every
> allegation of impairment, disability, ailment, pain that you've heard today, would
> an identical claimant with the same impairments be able to find work in
> substantial numbers in the national or regional economy?

The V.E. responded that he would not be able to find jobs in the economy. She testified:

> Based on the testimony, no Your Honor, I do not think that such a claimant could
> find jobs in the local or national economy. I think that such a claimant could find
> jobs in the local or national economy. I think that his abdominal problems, the
> pain that he has, and the apparent Crohn's disease where he has to go to the
> bathroom frequently –

* * *

> The ulcerative colitis could be causing the same problems or similar ones [as
> Crohn's disease]. I think that would keep him out of the workforce. He has
> testified he does his own cooking, cleaning, laundry, and grocery shopping, but he
> does it at his own pace, how he – you know, as he can. I think if he were required,
> you know, from what I heard, if he were required to be on a job eight hours a day,
> five days a week, I just don't think he could tolerate that.

(Tr. 615).

---

[19] Tr. 615.

Although the ALJ ultimately concluded that St. Marie could perform light work, not sedentary, the V.E. makes clear that St. Marie cannot perform work in the economy at any capacity, whether light or sedentary, because he cannot sustain work eight hours per day five days a week.

In order to be capable of engaging in substantial gainful activity, a person must have a realistic chance of both obtaining as well as holding a job in a *realistic* work setting:

> In [Wingo v. Bowen, 852 F.2d 827 (5th Cir.1988)], this Court held that a determination that a person is capable of engaging in substantial gainful activity depends on a finding not only that the individual has some chance of being hired, but also, that, taking account of the individual's exertional and non-exertional limitations, the individual has a reasonable chance, "once hired, of keeping the job." *Id.* at 831. We noted that "[a] claimant capable of performing sedentary or light work under the guidelines must have the ability to perform the required physical acts day in and day out in the sometimes competitive and stressful conditions in which all people work in the real world." *Id.* (*citing* Allred v. Heckler, 729 F.2d 529, 533 (8th Cir.1984)).

Watson v. Barnhart, 288 F.3d 212 (5th Cir. 2002).

Considering that St. Marie cannot maintain employment, and the fact that the vocational expert testified that employers would not tolerate an employee's inability to perform activities on a sustained basis, eight hours a day five days a week, the undersigned finds that the ALJ's determination that St. Marie could perform work on a sustained basis is not supported by substantial evidence.

*Conclusion*

For the foregoing reasons, it is **RECOMMENDED** that the Commissioner's decision be **REVERSED** and that St. Marie be awarded benefits consistent with an onset date of June 16, 2004.[20]

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on March 7, 2009.

_____
Mildred E. Methvin
United States Magistrate Judge

---

[20] A judgment entered adopting this Report and Recommendation constitutes a "final judgment" that triggers the filing period for an EAJA fee application. Shalala v. Schaeffer, 509 U.S. 292, 113 S.Ct. 2625, 2631 (1993); Freeman v. Shalala, 2 F.3d 552 (5th Cir. 1993).